(C.D. 2580)

NAUMES FORWARDING SERVICE *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 11, 1965)

*Schwartz & Lidstrom, Wallace & Schwartz,* and *Barnes, Richardson & Colburn* (*Earl R. Lidstrom* and *Joseph Schwartz* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Andrew P. Vance,* trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges; DONLON, J., concurring

RICHARDSON, Judge: The merchandise before the court consists, among other things, of painted earthenware plaques which were imported at Chicago from Italy, classified as earthenware articles which are not tableware, kitchenware, or table or kitchen utensils under 19 U.S.C.A., section 1001, paragraph 211 (paragraph 211, Tariff Act of 1930, as modified by T.D. 54108), and assessed with duty at the rate of 4 cents per dozen pieces and 21 per centum ad valorem. The involved cases were consolidated for trial purposes, and claims as to merchandise other than items designated on the invoices as plaques

were abandoned. With respect to the plaques, plaintiff claims that the merchandise is properly dutiable at the rate of 10 per centum under the provisions of paragraph 1547, as modified by T.D. 51802, as works of art (water colors). Defendant claims that the plaques are paintings in mineral color which are not provided for in the claimed paragraph.

One Aldo Azzolin of the importing firm of Azzolin Bros. testified on behalf of the plaintiff-broker. He testified that his firm has been in the importing business for 10 years and has been importing plaques from Italy for about 4 years, that the involved plaques were made in a factory in Alcyone, Italy, and were designed by the artist, Luigi Carron, who is one of the owners of the factory, and whom the witness has known for about 6 years. Mr. Azzolin further stated that he has visited the factory nine times and has observed the making of the plaques on each occasion that he has visited the factory, and has seen the plaques being decorated by skilled artists who work under the direction of Professor Carron. With respect to the making of the plaques, he testified that, prior to decoration, clay is molded into the form of a plaque, dried by air, and then fired in a kiln to obtain a bisque finish. The molds are decorated with a powder that is mixed with water on a piece of slate and applied to the plaque; that the plaque is then dipped in a bath of glaze and fired in a kiln. The plaque is equipped with a hinge for use in hanging on a wall, or is mounted on a walnut panel after importation. The witness stated that he did not personally know if all of the plaques were made in the manner he described.

Mr. Azzolin further testified that he had no knowledge of the makeup of the powder used for painting the plaques, has never made such plaques himself, that his firm does not sell paintings of water colors, that it is his understanding that a water color is a powder mixed with water, and that the invoice price of the plaques is about $3, and they retail for between $12 and $22. Plaintiff put in evidence two plaques representative of merchandise at bar (plaintiff's exhibits 1 and 2) and a number of photographs, illustrative of the plaques (plaintiff's collective exhibit 3). This is the substance of plaintiff's proof.

One William H. Bailey, a concededly competent chemist, employed in the customs laboratory at the port of entry, testified on behalf of defendant. Mr. Bailey testified that he analyzed a sample of the plaques to determine if they were mineral color paintings. He stated that he broke off a small portion of the painted sample, fired it at 1,200° Fahrenheit, observing a deterioration of color, that he performed a spectrographic analysis on the sample for the presence of

metallic elements and ascertained the presence of lead, chromium, iron, boron, cobalt, nickel, and tin, and observed that the pigmentation itself was under a glaze. The witness stated that metallic oxide colors are normally used in making a ceramic, because such colors withstand elevated temperatures, and that, in his opinion, based upon tests he has conducted, oil and water paints discolor during firing.

Mr. Bailey further stated that it is possible to apply the metal elements in the paints used on the plaques at bar to a surface using water as an agent, that it would be impossible to determine from the tests whether the metals were present in various degrees or were mixed together, and that, in addition, the sample contained calcium, aluminum, silica, and magnesium, elements which would normally be found in some types of clay. Mr. Bailey testified that the tests were conducted on the entire article, including the base material, and that it would be very difficult to separate the colored matter from such material for analysis.

Also received in evidence was the customs laboratory report on the sample analysis, which was prepared by Mr. Bailey (defendant's exhibit A), and a letter from the maker of the plaques to the importer (defendant's exhibit B) in which the maker states, among other things, that its colors are "mineral dust colors melted into water, to be painted under glaze."

The function of the water which is associated with the paint and its application is disputed. The gravamen of plaintiff's argument is that the water, which is the vehicle by means of which the pigment is applied to the surface, denominates the paint a "water color." Defendant argues that the mineral base of the paint, and not the vehicle of its application, is controlling in determining the involved paintings to be paintings in "mineral color."

The term "water color" is defined in Webster's New International Dictionary (2d ed. 1958) as:

1. A paint whose liquid is a water dispersion of the binding material, which may be glue, casein, gums, etc. ;—so called in distinction from *oil color*, etc.

And the term "mineral color" is defined in the same dictionary as, "Any inorganic pigment."

It has long been known by the courts that mineral colors may be mixed with oil or water and not lose their identity as mineral colors by such admixture. See *Bour et al.* v. *United States*, 91 Fed. 533. Hence, the mere presence of water in a paint would not appear to be determinative of the nature of the paint either way. Plaintiff has offered little else in the way of evidence besides the observations of a member of the importing firm as to the painting and decorating of

the plaques. And this evidence is limited to observations of the mixing of the powders with water before application of the mixture to the plaque. Plaintiff has adduced no evidence of the presence of a binding material in the involved paints, or any other evidence of its composition. Consequently, the record is wholly insufficient to make out a *prima facie* case that the involved paints are "water colors." Under these circumstances, defendant has no burden to support the collector's classification, and we need not, therefore, consider the evidence which defendant offered in this behalf, except to say that such evidence does not aid the plaintiff's case.

For the reasons stated, the protests of schedule A are overruled. Judgment will be entered accordingly.

### CONCURRING OPINION

DONLON, Judge: I concur in the opinion and decision as to the failure of plaintiff to establish, by its proofs, that these plaques are "water colors." There are, however, two other matters which I wish to mention as relevant in these cases.

In four of the seven consolidated cases, namely, protests 62/6513, 62/6514, 62/6515, and 62/6518, I doubt whether a protest is before us. In each of these cases, plaintiff, a customhouse broker, wrote a letter in behalf of its client, the importer, returning to the collector, unpaid, the invoices for increased duties so that the examiner might review his advisory classificaton "under Section 16.13." The letter, in each case, concludes: "The increase duty bill is being returned pending decision on the above."

While these letters state the gravamen of the injury asserted, section 514 protests against the collector's decision on liquidation require something more than request for reconsideration by the examiner of an advisory recommendation. Cases 62/6513, 62/6514, 62/6515, and 62/6518 should be dismissed for lack of protest under section 514.

In the other three cases, 62/17274, 63/3378, and 63/5047, there are protests.

Both in the nonprotested and the protested cases, the claim is for duty at 10 percent under paragraph 1547, as modified. There is nothing in them that informs the court as to a claimed classification, save only that this merchandise is such as plaintiff believes to be dutiable under modified paragraph 1547 at 10 percent. Plaintiff seems to believe that this generality entitles the merchandise to classification under paragraph 1547 at 20 percent, if they are found not to be works of art done in oil or water colors, dutiable at 10 percent. Plaintiff's brief so states.

I find it difficult to read such a claim into the very general protests before us, or into the letters that request the examiner to review advisory classification. However, it is unnecessary to rule on this inasmuch as plaintiff's proofs fail to show that these plaques are any kind of works of art.